UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

JAMES T. ROBERTS, JR.,

                      Plaintiff,

                      **REPORT AND RECOMMENDATION**

  - against -

                      02 CV 4414 (CBA)

U.S. DEPARTMENT OF
TRANSPORTATION, et al.,

                      Defendants.
-------------------------------------------------X

On February 19, 2002, plaintiff James T. Roberts, Jr. ("Roberts") commenced this action pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, seeking damages from the U.S. Department of Veterans Affairs (the "VA"), the Federal Aviation Administration (the "FAA") and the Department of Transportation ("DOT"),[1] based on the VA's transfer of Roberts' employee health records (the "Health Records" or "Records") to the FAA when he began his employment with the FAA in 1989. Roberts also seeks an Order directing the defendants to retrieve and destroy all copies of his Health Records and provide a written accounting of their efforts and the destruction of the Records.

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the transfer of the Health Records constituted a "'routine use'" of the Health Records, which is an exception to the Privacy Act, and that defendants'

---

[1]Since the FAA is a component of the DOT, see Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, dated January 3, 2005 ("Defs.' Mem") at 1 n.1, the two defendants are collectively referred to herein as the "FAA."

1

actions did not constitute a violation of plaintiff's rights. (Defs.' Mem. at 1). In the alternative, defendants contend that they are entitled to summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), on the grounds that Roberts consented to the transfer of the Health Records and experienced no adverse affects as a result of the transfer. (Id.) Defendants argue that in the absence of a showing that they acted wilfully or intentionally, and that there was an adverse impact on Roberts, his claim fails as a matter of law. (Id. at 2).

By Order dated April 18, 2005, defendants' motion was referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND

In their statement pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Stmnt"), defendants assert that Roberts was employed as a mechanic by the VA in various positions from 1975 through September 1989. (Defs.' 56.1 Stmnt ¶¶ 1, 8).[2] The VA provided medical care to Roberts while he was employed by the VA, and the VA maintained records of that care at the Employee Health Unit at the Northport VA Medical Center (the "Northport VAMC"). (See id. ¶¶ 2-3). According to defendants, access to Mr. Roberts' Health Records was restricted to those with a need to know only. (Id. ¶ 3; see also Fields' Decl. ¶ 3).[3]

---

[2]Plaintiff does not appear to have submitted a counter-statement of material facts in response as required by Local Civil Rule 56.1.

[3]Citations to "Fields' Decl." refer to the Declaration of Aaron J. Fields, dated December 28, 2004.

2

In an application dated July 6, 1989, Roberts applied for a position as a mechanic with the FAA. (Defs.' 56.1 Stmnt ¶ 4). Included in the Application for Federal Employment[4] that Roberts submitted was a standard "Release of Information" provision (the "Release provision"), in which Roberts "consent[ed] to the release of information about [his] ability and fitness for Federal employment by employers, schools, law enforcement agencies and other individuals and organizations to investigators, personnel staffing specialists, and other authorized employees of the Federal Government." (Id. ¶ 5 (quoting SF 171 at 4); see also Healey Decl.[5] ¶¶ 4-5, Ex. 1). The Release provision also contained a statement that the applicant understood that "any information I give may be investigated [by the prospective government agency] as allowed by law or Presidential order." (Healey Decl., Ex. 1).

On September 24, 1989, Roberts began working as a utility systems repairer-operator for the FAA. (Defs.' 56.1 Stmnt ¶ 7). Among other things, Roberts was responsible for the installation, repair and modification of cooling and heating systems, the dismantling of pumps, impellers and compressors, and the performance of complex repairs. (Id.) In or around April 1990, Roberts was promoted to an engineering technician position, and then in December 1994, he was reassigned to the position of an Airways Transportation Safety Specialist ("ATSS"). (Id. ¶ 12). As an ATSS, Roberts performed a variety of safety sensitive functions that assist in the operation and maintenance of the National Airspace System. (Id.) These responsibilities required Roberts to work continuously near electrical equipment. (Healey Decl. ¶ 6).

---

[4] The Application for Federal Employment is also referred to as a Standard Form 171 ("SF 171").

[5] Citations to "Healey Decl." refer to the Declaration of Patricia Healey, dated December 23, 2004.

According to the government's Statement of Material Facts, which has not been disputed by plaintiff (see n.2 supra), when an employee transfers from the VA to another federal agency such as the FAA, his or her Official Personnel File ("OPF") and medical file are sent to the FAA within a month or two of the date of transfer. (Id. ¶ 6; Healey Decl. ¶ 7). Among other things, these files are used to assist the FAA in determining whether the employee is capable of performing the duties of the new position. (Defs.' 56.1 Stmnt ¶ 6). According to Patricia Healey, Manager, Personnel Services Branch, FAA Eastern Region, the FAA reviews the OPF and medical file of each new employee. (Healey Decl. ¶¶ 1, 8). The government asserts that since Roberts was transferred to the FAA in September 1989, his Health Records would have been sent to the FAA in or about October 1989. (Id. ¶ 7). Upon receipt, the Health Records were maintained at the FAA Eastern Region Aerospace Medicine Division. (Id. ¶ 9).

In April, May and August 1999, the FAA received letters from Roberts' physicians indicating that Roberts had certain physical and mental work-related restrictions. (Defs.' 56.1 Stmnt ¶ 13; Healey Decl. ¶ 10, Ex. 2). Specifically, in 1999, Roberts received an "Implantable Cardioverter Defibrilator" ("ICD"). (Defs.' 56.1 Stmnt ¶ 13). One of the letters received from plaintiff's physicians indicated that, as a result of the implantation of the ICD, Roberts should no longer be exposed to electromagnetic forces. (Healey Decl., Ex. 2) Based on these letters, the FAA informed Roberts, in a memorandum dated August 24, 1999, that he could no longer perform the duties of an ATSS because those duties required him to work near electrical equipment on a continuing basis. (Id.)

Roberts thereafter brought a claim of discrimination against the FAA challenging his removal from the ATSS position. (Defs.' 56.1 Stmnt ¶ 14). In his Complaint to the Equal

4

Employment Opportunity Commission ("EEOC"), filed on or about July 17, 1999, Roberts claimed that the FAA's decision not to allow him to return to his position as an ATSS was based on discrimination. (Id. ¶ 19). In a decision dated September 20, 2004, the administrative judge ("AJ") rejected plaintiff's claims of discrimination, finding that Roberts was removed from his position as an ATSS because the equipment with which he worked did not conform to the guidelines for his ICD. (Id.; Mantell Decl., Ex. 4 at 8).[6] The AJ also found no causal connection between the FAA's decision to remove Roberts and his claims that he was regarded as disabled. (Defs.' 56.1 Stmnt ¶ 19; Mantell Decl., Ex. 4 at 9). The AJ also found that Roberts' request for an accommodation was unreasonable given the need of an ATSS to work near electronic equipment and the "'nature and severity of the potential harm to the population'" that could result from the ICD's interference with the FAA's system. (Defs.' 56.1 Stmnt ¶ 19; Mantell Decl., Ex. 4 at 9).

In connection with his claim of discrimination, Roberts, through his counsel in that matter, made a FOIA and Privacy Act request on December 12, 1999, seeking three categories of documents, including records concerning his medical condition, which he believed would support his claim of discrimination by the FAA. (Defs.' 56.1 Stmnt ¶ 14; Torcivia Decl.[7] ¶ 2). The records were released to Roberts by the FAA on or about February 11, 2000. (Defs.' 56.1 Stmnt ¶ 14; Torcivia Decl. ¶ 4). Among the records released to Roberts were the Health Records received from the VA at the time of Roberts' transfer to the FAA. (Torcivia Decl. ¶¶ 3-4).

---

[6]Citations to "Mantell Decl." refer to the Declaration of Laura D. Mantell, dated December 29, 2004.

[7]Citations to "Torcivia Decl." refer to the Declaration of Judith A. Torcivia, dated December 22, 2004.

5

On January 10, 2002, nearly two years later, Roberts, through his attorney, sent a letter to the FAA complaining that the FAA had illegally obtained his VA Health records and requesting the destruction of the Records. (Defs.' 56.1 Stmnt ¶ 15). In response, the FAA sent a letter dated February 22, 2002, indicating that the Records had been obtained over twelve years earlier at the time of Roberts' transfer to the FAA and that the Records had been maintained by the FAA pursuant to agency regulations. (Id. ¶ 16).

This action was originally commenced on February 19, 2002 in the Eastern District of Pennsylvania and then transferred to this Court on August 6, 2002, after defendants moved to dismiss for improper venue. (Explanation and Order, E.D.P.A., July 2, 2002; Defs.' 56.1 Stmnt ¶ 17). In this action, plaintiff alleges that the VA violated his rights under the Privacy Act, 5 U.S.C. § 552a, by releasing his "highly personal medical records" to the FAA and that the FAA failed to maintain the confidentiality of those records in accordance with the Privacy Act. (Pl.'s Mem. at 1).[8] Roberts claims that the transfer of the Records to the FAA in 1989 caused him to suffer "'psychic injuries'" and led the FAA to "'stereotype'" him as disabled. (Defs.' 56.1 Stmnt ¶ 18) (quoting Mantell Decl., Ex. 3 at 5; Plaintiff's Answers to Defendant's Interrogatories and Responses to Defendant's Requests for Production ("Pl.'s Answers")). Despite limited discovery on the issues of Roberts' claimed "psychic injuries" and "stereotyping," the government contends that plaintiff has failed to produce any documentation supporting his claimed injuries. (Defs.' Mem. at 6).

---

[8]Citations to "Pl.'s Mem." refer to the Plaintiff's Response Memorandum to Defendants' Motion for Summary Judgment, dated March 21, 2005.

Following a pre-motion conference with the district court on April 2, 2004, the defendants filed the instant motion.

DISCUSSION

The defendants argue that drawing all reasonable inferences in favor of Mr. Roberts, the Complaint fails to state a violation of the Privacy Act because the VA's disclosure of Mr. Roberts' records was authorized by the "routine use" exception of the Act. (Id. at 1, 8-10). Thus, the defendants seek dismissal of all claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In lieu of dismissal, the defendants contend that summary judgment should be granted in their favor based on the undisputed evidence that Mr. Roberts consented to the transfer and can not establish that he suffered any injury as a result. (Id. at 1, 10-16).

A. Motion on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a motion for judgment on the pleadings is to be analyzed under the same standards used to evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (noting that "[t]he standard for Rule 12(c) is essentially the same [as the standard for Rule 12(b)(6)] . . . : the [defendant] is entitled to judgment only if it has established 'that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law'") (citations omitted); see also Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996). "All allegations in the complaint must be accepted as true; all inferences must be drawn in favor of the plaintiff; and dismissal is proper only when it 'appears beyond doubt that the

7

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)).

B. Summary Judgment Standard

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(c)). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials

of his pleading. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. A party opposing summary judgment may not "merely. . .assert a conclusion without supplying supporting arguments or facts. . . ." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The party must set forth "concrete particulars" showing that a trial is necessary. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

C. The Privacy Act

The Privacy Act of 1974 generally restricts or prohibits the disclosure of information in records maintained by federal agencies, "except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . ." 5 U.S.C. § 552a(b). See Mount v. United States Postal Serv., 79 F.3d 531, 533 (6th Cir. 1996); Wiley v. Dep't of Veterans Affairs, 176 F. Supp. 2d 747, 752 (E.D. Mich. 2001). There are twelve statutory exceptions to this prohibition on disclosure, one of which permits disclosure "for a routine use . . . ." 5 U.S.C. § 552a(b)(3); see Mount v. United States Postal Serv., 79 F.3d at 533; Wiley v.

Dep't of Veterans Affairs, 176 F. Supp. 2d at 752 n.9.

A suit for damages based on a violation of the nondisclosure provisions of the Privacy Act is authorized under the "catch-all provision" of the statute, Section 552a(g)(1)(D). See Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992) (citing 5 U.S.C. § 552a(g)(1)(D)). In order to recover damages under this provision, the plaintiff must establish four elements: "(1) the information is covered by the Act as a 'record' contained in a 'system of records'; (2) the agency 'disclos[ed]' the information; (3) the disclosure had an 'adverse effect' on the plaintiff . . .; and (4) the disclosure was 'willful or intentional.'" Id.; see also Barry v. United States Dep't of Justice, 63 F. Supp. 2d 25, 27 (D.D.C. 1999).

The Act defines a "record" as "any item, collection or grouping of information about an individual that is maintained by an agency, including, but not limited to, . . . medical history. . . ." 5 U.S.C. § 552a(a)(4). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552(a)(a)(5).

In this case, plaintiff's Health Records clearly fall within the definition of records that are subject to the protection of the Privacy Act. Moreover, there appears to be no dispute that by transferring the Health Records from one agency to the other, the VA "disclosed" the information. Cf. Quinn v. Stone, 978 F.2d at 134 (finding no disclosure where the information transmitted is already known to the recipient but rejecting argument that there is no disclosure when the information is readily accessible to the public). However, under the "routine use" exception to the statute, disclosure of an otherwise protected record is permitted when "the use of

such record [is] for a purpose which is compatible with the purpose for which it was collected."

5 U.S.C. § 552a(a)(7); see Mandel v. United States Office of Pers. Mgmnt, 244 F. Supp. 2d 146, 151 (E.D.N.Y. 2003).

D. The "Routine Use" Exception

Under the Privacy Act, agencies are required to provide notice in the Federal Register listing "each routine use of the records contained in the system, including the categories of users and purpose of such use." 5 U.S.C. § 552a(e)(4)(D). See Shannon v. General Elec. Co., 812 F. Supp. 308, 316 (N.D.N.Y. 1993). Thus, to demonstrate that plaintiff's Health Records fall within the "routine use" exception, defendants must establish notice through publication in the Federal Register and compatibility. See Freeman v. United States Envtl. Prot. Agency, No. 02 CV 387, 2004 WL 2451409, at *6 (D.D.C. Oct. 25, 2004) (citing Dep't of the Air Force v. Fed. Labor Relations Auth., 104 F.3d 1396, 1401-02 (D.C. Cir. 1997)).

The government asserts that in this case, there is an Office of Personnel Management ("OPM") regulation that appears in the Federal Register and that defines as a "routine use" the disclosure of an employee's health records "to a Federal agency, in response to its request or at the initiation of the [VA], in connection with the retention of an employee . . . [or] the conducting of a suitability or security investigation of an individual . . . or other benefit by the requesting agency . . . to the extent that the information is relevant and necessary to the requesting agency's decision on the matter." OPM/GOVT-10, "Employee Medical File System Records," 53 Fed. Reg. 2118-01 (Jan. 26, 1988), 1988 WL 275715.

The government argues that here the "disclosure" of plaintiff's Health Records occurred in 1989 when the Records were transferred to the FAA at the time Roberts left his employment with the VA and began working for the FAA. (Defs.' Mem. at 9). The government argues that this disclosure provided the FAA with records relevant to Roberts' medical condition and any treatment he received while working at the VA. Disclosure of this information was "compatible with the purpose for which the [VA] . . . collected" the records, 5 U.S.C. § 552a(a)(7), in that if Roberts had suffered on injury at work and sought treatment, the FAA medical personnel could have used the records to determine his prior medical condition. Similarly, if he suffered from any medical condition that could have interfered with his new position at the time of transfer, the FAA could have consulted those records – a use compatible with the purpose for their collection. (See id. at 9-10 and accompanying notes).

Plaintiff does not appear to dispute that the transfer of the Records at the time of plaintiff's commencement of employment with the FAA was permitted as a "routine use" as defined in OPM/GOVT-10. Instead, he alleges that "after the DOT secured plaintiff's medical records from the [VA], it failed to maintain the confidentiality of those medical records in accordance with Privacy Act, implementing regulations, and the DOT's regulations. . . ." (Pl.'s Mem. at 6).[9] He does not explain how he believes these regulations were violated, except to allege that defendants "failed to adhere to the record-keeping requirement of the Privacy Act"

---

[9]In this regard, plaintiff cites a memorandum from an FAA Regional Flight Surgeon, dated October 4, 1999 noting that the documents in the file did not predate January 1, 1996. (See id. at 7, Ex. A). From this and the doctor's representation that there were only three pages in the file, plaintiff concludes that "[c]learly, then, plaintiff's [VA] medical records had to have been received by the FAA after October 4, 1999." (Id. at 7). It is unclear why plaintiff draws this conclusion or why it is relevant in any way to his claims.

and that defendants failed to specify the system of records in which the Records were to have been kept, and failed to identify the custodian of the Records or the system of controls established to ensure their confidentiality. (Id. at 6-7).

Given that plaintiff does not appear to contest the defendants' argument that the transfer of his Records fell within the "routine use" exception of the Act, and has not raised any facts to counter defendants' submissions indicating that the records were transferred at the time of plaintiff's employment at the FAA, there appears to be no basis for a claim that defendants violated plaintiff's rights under the Privacy Act. Thus, accepting plaintiff's allegations as true for purposes of defendants' Rule 12(c) motion, the Court respectfully recommends that defendants' motion for judgment on the pleadings be granted with respect to plaintiff's claim that the VA was not entitled to disclose his Records to the FAA. (See Compl. ¶ 9).

E. Proper Maintenance of Records

To the extent that plaintiff has argued that the defendants failed to properly maintain his Records in accordance with Section 552a(c)[10] of the Privacy Act (Pl.'s Mem. at 3-7), plaintiff has

---

[10] 5 U.S.C. § 552a(c) provides:
> Each agency, with respect to each system of records under its control, shall ... keep an accurate accounting of: (A) the date, nature, and purpose of each disclosure of a record to ... another agency made under subsection (b) of this section; and (B) the name and address of the ... agency to whom the disclosure is made; (2) retain the accounting ... for at least five years [after the disclosure] or the life of the record, whichever is longer ... (3) ... make the accounting ... available to the individual named in the record at his request; and (4) inform any ... agency about any correction or notation of dispute made by the agency in accordance with subsection (d) of this section of any record that has been disclosed to the ... agency if an accounting of the disclosure was made.

failed to allege any injury he sustained as a result of the alleged record-keeping violation. While plaintiff states generally in his answers to defendants' interrogatories that he has suffered "psychic injuries, . . . stress, anxiety and depression" (Pl.'s Answers at 14), he provides no evidence of a causal connection between any injury he suffered and the alleged record-keeping delinquency of the VA. The requirement that a plaintiff must establish an "adverse effect" caused by the violation in order to recover damages applies fully to claims brought under Section 552a(c). See Kimberlin v. United States Dep't of Justice, 605 F. Supp. 79, 83 (N.D. Ill. 1985) (citing 5 U.S.C. § 552a(g)(1)(D)), aff'd, 788 F.2d 434 (7th Cir.), cert. denied, 478 U.S. 1009 (1986). See also Ely v. United States Dep't of Justice, 610 F. Supp. 942 (N.D. Ill. 1985), aff'd, 792 F.2d 142 (7th Cir. 1986) (finding plaintiff had alleged no adverse effect caused by Section 552a(c) violation, in that adverse effect was caused by "routine use" disclosure itself, not failure to maintain records).

The Court finds that plaintiff has failed to allege any adverse effect caused by the alleged failure of the VA to maintain his Records as required by 5 U.S.C. § 552a(c). The Court, therefore, respectfully recommends that this claim be dismissed as well for failure to state a claim.

F. Consent to Transfer

The government argues that even if plaintiff's complaint survives a Rule 12(c) motion, summary judgment should be granted because Roberts gave his express consent to the VA's disclosure of his Health Records. Specifically, Roberts submitted a signed SF 171 in July 1989, a few months prior to the transfer of the Records which contained an explicit "Release of

14

Information" provision. (Healey Decl., Ex. 1). The Release provision explicitly stated that Roberts "consent[ed] to the release of information about [his] ability and fitness for Federal employment . . . to . . . authorized employees of the Federal Government." (Id.) This statement directly contradicts Roberts' claim that he did not consent. (Compl. ¶¶ 9-10).

Since the Privacy Act only prevents disclosure of records without "the prior written consent" of the individual who is the subject of the records, the transfer of the Records here did not violate the Privacy Act because Roberts gave his consent to the disclosure. See Olivares v. National Aeronautics & Space Admin., 882 F. Supp. 1545, 1550 (D. Md. 1995), aff'd, 103 F.3d 119 (4th Cir. 1996), cert. denied, 522 U.S. 814 (1995); Wiley v. Dep't of Veterans Affairs, 176 F. Supp. 2d 747, 753 (E.D. Mich. 2001).

Moreover, because the Release provision on its face authorized the transfer, Roberts cannot establish that the defendants' conduct was either "intentional or willful," a requirement imposed by the Act. See 5 U.S.C. § 552(a)(g)(4); see also Mount v. United States Postal Serv., 79 F.3d at 533 (stating "[a]n agency acts intentionally or willfully 'either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the [Privacy] Act"); Quinn v. Stone, 978 F.2d at 131. Where the individual has signed a release authorizing disclosure, the courts have rejected claims that the government acted willfully. See Wiley v. Dep't of Veterans Affairs, 176 F. Supp. 2d at 754-57.

Although plaintiff argues that he never authorized the VA to disclose his medical records to the FAA or DOT, nor did he authorize the FAA or DOT to obtain his records from the VA (see Compl. ¶¶ 9-10; Pl.'s Mem. at 6), he fails to present any evidence to rebut the express language of the Release provision in the SF 171, nor has he presented any argument as to why

15

this Release provision should not be applied as a bar to his claim. Accordingly, the Court finds that the transfer of plaintiff's records from the VA to the FAA was authorized by the Release provision signed by plaintiff.

## CONCLUSION

In summary, because plaintiff has failed to address defendants' argument that the disclosure of his Health Records was permitted under the "routine use" exception, and has failed to allege that he suffered any adverse effect caused by the purported failure of the VA to properly maintain his records, the Court respectfully recommends that defendants' motion for judgment on the pleadings be granted as to these claims. Moreover, in the event that the court were to find that plaintiff's complaint survived defendants' Rule 12(c) motion, the Court respectfully recommends that summary judgment be granted in defendants' favor because plaintiff has failed to establish that there is a material issue of fact in dispute regarding either the terms or scope of the Release provision signed by plaintiff authorizing the VA's disclosure of plaintiff's Health Records.[11]

Any objections to this Report and Recommendation must be filed with the Clerk of the

---

[11] Defendants further argue that Roberts has failed to present any evidence that he was adversely impacted by the transfer of his records. See Quinn v. Stone, 978 F.2d at 131, 135-36; Barry v. United States Dep't of Justice, 63 F. Supp. 2d at 27. Although he claims that he suffered "psychic injuries, . . . stress, anxiety and depression" (Pl.'s Answers at 14), defendants argue that he has not produced any records or evidence to substantiate these claims. (Defs.' Mem. at 13-14). Moreover, given that the transfer of the records occurred in 1989, almost ten years before the FAA's determination that Roberts needed to be reassigned, defendants contend that there is no causal connection between the transfer and the FAA's decision. (Id. at 14-15). Given that the Court finds that there are a number of other reasons on which to grant judgment in favor of defendants, the Court does not reach these arguments.

Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
February *13*, 2006

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York